ELMORE *v.* BISHOP.

Opinion delivered September 28, 1931.

*Jeff Bratton,* for appellant.

*J. T. Craig,* for appellee.

MEHAFFY, J. The appellant, R. L. Elmore, became sheriff of Greene County in 1916 and went out of office on January 1, 1920. Mrs. Bessie Cook died in 1918, and the appellant, sheriff of Greene County at the time, as public administrator, took charge of the estate of Bessie Cook, deceased. The record does not show that he was ever appointed administrator and does not show that he gave bond as administrator. He did, however, take charge of the property and made two settlements. The last settlement as public administrator was made January 16, 1923, and the following judgment was entered on the back of the last settlement: "Settlement examined and approved and administrator ordered and directed to pay over to guardian or curator or heirs of Mrs. Bessie Cook, $118.02 with interest, and judgment is rendered against said administrator and his bondsmen for balance, for which execution may issue. January 16, 1923, J. C. Honey, Probate Judge." The appellees, Clara Bishop, Margaret Mayo and Carl Cook, the heirs at law of Bessie Cook, deceased, on August 7, 1930, filed suit against appellant for $118.02.

Appellant testified that he took possession of the estate of Mrs. Bessie Cook and filed two settlements, and that he had had in his possession $118.02, payable to the estate of Bessie Cook and that he was directed to pay the money to Wm. Poole, and that he did pay the money to Mr. Poole according to the directions of the probate judge; that he took a receipt from Poole and carried it to the clerk's office. Mr. Poole was at that time working in the Security Bank & Trust Company. The receipt was not found, and appellant testified that he did not know what became of it. He thought he paid the money by check on the Bank of Commerce, and that the check was made payable to Poole. All his checks had been burned. He told Poole he was paying him the Bessie Cook money. Payment was made sometime after he filed his settlement.

Ted Rogers, assistant bookkeeper at the Bank of Commerce, testified that he could not find any account

that R. L. Elmore kept with the bank. Elmore Brothers had an account there, but he could find no record of a check given for $118. The period for which he examined the books was for 1914 to 1921 or 1922 and not for 1923.

Jim Poole, a brother of Wm. Poole, testified that he thought Wm. Poole left there sometime in the fall of 1922, and that he, witness, did not receive any money from Elmore in the bank.

It is undisputed that the appellees are the only heirs at law of Mrs. Bessie Cook, deceased, that Elmore had in his hands as public administrator, belonging to the heirs, $118.02, and the court submitted to the jury the following interrogatory: ''Did R. L. Elmore, administrator of Cook estate, pay to the Security Bank & Trust Company the sum of $118.02?'' and the jury found that he did not. The order of the court was that he pay over to the guardian or curator or the heirs of Mrs. Bessie Cook the sum of money mentioned. The Security Bank & Trust Company was the curator.

The settlement made by the appellant and the order or judgment of the court was quite a long while after appellant's term of office had expired, and at the time the suit was brought Clara Bishop was 25 years old, Margaret Mayo was about 24 years old and Carl Cook was 27 years old. There was judgment against appellant for $118.02, and he prosecutes this appeal to reverse said judgment.

The only disputed question of fact in the case is whether appellant paid the $118.02.

Appellant contends that because there is no record of the administration, no inventory filed, no application for appointment as administrator, no bond as administrator and no record entry of anything pertaining to the administration of the Bessie Cook estate, the case should be reversed.

Our statute provides: ''The sheriff shall, by virtue of his office, be public administrator in and for his county.'' Crawford & Moses' Dig., § 245.

No appointment by the probate court was necessary. The sheriff was by virtue of his office public administrator. Appellant testified himself that he took possession of the estate and filed two settlements, and he also testified that he did have in his possession $118.02 payable to the estate of Bessie Cook.

"The general power to act as public administrator may be assumed by the officer taking the property into possession, if necessary, to prevent waste, or upon the order of the probate court directing him to do so." *Williamson* v. *Furbush,* 31 Ark. 539.

A public administrator may in the first instance act on his own judgment in taking charge of an estate, but the probate court has jurisdiction to determine all questions arising in the progress of the administration. *McCabe* v. *Lewis,* 76 Mo. 296.

The probate court in this case exercised jurisdiction and passed on two settlements filed by appellant as public administrator. "It does not appear, either by the petition or proofs, that the probate court ordered the plaintiff to take possession of the estate of Mrs. Taylor; but it is alleged in the petition, and was admitted on the trial, that plaintiff was the duly elected and qualified administrator of Lewis County, and that he took charge of the estate of Clarissa Taylor, and filed notice thereof in the probate court. Section 299, Rev. St. 1889, makes it the duty of the public administrator to take charge of the estates of deceased persons in the cases specified in the first seven subdivisions thereof. In those cases, the public administrator, in taking charge of estates, acts independent of any order of the probate court." *Leeper* v. *Taylor,* 111 Mo. 312, 19 S. W. 955. Appellant took charge of the estate as public administrator, filed his settlements in the probate court as such administrator, and the fact that no record was found showing the administration is immaterial. When appellant filed his second settlement, the probate court made the order above set out. This order was indorsed on the back of the settlement, but was not shown to have been recorded elsewhere.

It was, however, the judgment of the court, and appellant relies on it as finally settling and adjudicating his rights as administrator. It was a valid judgment although not recorded. *McConnell* v. *Bourland,* 175 Ark. 253, 299 S. W. 44.

It is contended also that the evidence conclusively shows the judgment was paid. It is true that appellant testified that he had paid the amount, but a rule established by this court is that the testimony of a party to an action, who is interested in the result, will not be regarded as undisputed in determining the legal sufficiency of the evidence. *Metcalf* v. *Jelks,* 177 Ark. 1023, 8 S. W. (2d) 162.

Not only will the evidence of an interested party not be regarded as undisputed, but in this case the officers of the bank were unable to find any record of a check claimed to have been given in payment by the appellant, and appellant had no account at the bank at the time the payment was claimed to have been made. It also appears probable from the evidence that Poole, the man appellant thinks he paid it to, left in 1922, and the payment, if made, was made in 1923. As to whether the amount was paid was a question for the jury, and the verdict on this issue was against appellant. This finding is conclusive here.

It is contended that the claim is barred by the statute of limitations. The statute provides: "Actions on all judgments and decrees shall be commenced within ten years after cause of action shall accrue, and not afterwards." Crawford & Moses' Digest, § 6959.

This action was commenced within ten years, and was therefore not barred.

Appellant also contends that the trial court erred in holding that the action was barred as to the sureties on appellant's bond and not barred as to appellant. He says this action of the court was in effect holding that the appellant could not plead any statute of limitations. We do not agree with appellant in this contention. The suit was against the sureties on the appellant's bond as

sheriff, and not against the sureties on administrator's bond. It appears that he did not give any bond as administrator. "Actions on the official bonds of sheriffs, coroners and constables shall be commenced within four years after the cause of action shall accrue and not afterward." Crawford & Moses' Dig., § 6957.

The judgment of the circuit court is affirmed.