BRUNZELL CONSTRUCTION CO., INC. OF NEVADA, A NEVADA CORPORATION, APPELLANT, *v.* HARRAH'S CLUB, A NEVADA CORPORATION, RESPONDENT.

No. 4889

August 17, 1965                    404 P.2d 902

*Goldwater, Taber and Hill,* of Reno, for Appellant.

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Respondent.

# OPINION

By the Court, BADT, J.:

This appeal grows out of a contest between appellant (sometimes hereinafter referred to as Brunzell) and respondent (sometimes hereinafter referred to as Harrah) whether Harrah's action against Brunzell and Glens Falls Insurance Company, a New York corporation (sometimes hereinafter referred to as Glens Falls) in the Second Judicial District Court, Washoe County, Nevada, should proceed to trial in that court, or whether Brunzell's action against Harrah and Glens Falls and some seven other defendants, theretofore filed and pending in the Superior Court of Los Angeles County, California, should proceed to trial in that court. (The

proceedings in the Nevada court are sometimes hereinafter briefly referred to as the Nevada case and the proceedings in the California court as the California case.)

A brief recital of the proceedings to date follows:

Brunzell filed suit in California June 11, 1962. Defendants in that action were Harrah, Glens Falls and some seven residents of California. The action grew out of a construction contract between Brunzell and Harrah. Glens Falls was the surety on the construction bond. The individual defendants included Wagner, the architect, Raimist, assistant architect, Dames & Moore, a co-partnership, and its members, Smoots, Dames and Moore, soils engineers, and Martin, the structural engineer. William Harrah, as an individual, was also a defendant in the California action but was not a party in the Nevada action. All the California defendants appeared generally in the California action except Harrah's Club, Inc., which appeared specially in the California action on July 19, 1962, by a motion to quash service upon it. Such motion was granted by the Superior Court of Los Angeles County, California, April 8, 1963, but this order was reversed on March 23, 1964, by the District Court of Appeal of the State of California, which held Harrah's Club subject to the jurisdiction of that state by service on the secretary of state of California on January 23, 1963, pursuant to an order of the superior court made January 22, 1963. Brunzell Construction Co., Inc. of Nevada v. Harrah's Club, 225 Cal. App.2d 734, 37 Cal.Rptr. 659.

Harrah filed its Nevada action against Brunzell and Glens Falls in Nevada July 24, 1962. Brunzell moved the Nevada court for a stay of the Nevada proceedings and Harrah moved the Nevada court for an injunction restraining Brunzell from proceeding against it in California. On August 23, 1963, the Nevada court denied Brunzell's motion for a stay and granted Harrah's motion for an order enjoining Brunzell from proceeding against it in California. Such order however reserved to Brunzell the right to prosecute its appeal from the order of the Superior Court of Los Angeles County quashing

service upon Harrah. Following the decision of the District Court of Appeal of California reversing the superior court's order quashing service, and holding that Harrah was subject to the California jurisdiction, Brunzell renewed its motion in the Nevada action for a stay of proceedings in Nevada and also moved to terminate and dissolve the injunction restraining Brunzell from proceeding against Harrah in California. On July 23, 1964, the Superior Court of Los Angeles County, on Harrah's motion, stayed all proceedings against Harrah in California "* * * pending termination of the injunction dated August 23, 1963, made in said 'Reno lawsuit' by the Nevada Court itself, in the event it should hereafter elect to do so, * * *." On December 24, 1964, the Nevada district court denied Brunzell's motion to stay the Nevada proceedings and to dissolve the injunction of August 23, 1963, restraining it from proceeding in California.[1]

---

[1] The Nevada district court made and filed a "Statement and Order" which it ordered to be made a part of the record in that case stating in part as follows:

"* * * On December 15, 1964 I granted leave to defendant to file its motion to dissolve the preliminary injunction. In addition there was filed a motion herein to stay these proceedings on April 1, 1964, and I granted leave of Court to file said motion on said date.

"On December 24, 1964, I entered an order denying both motions of Brunzell Construction Co., Inc. of Nevada to dissolve the injunction and for stay of proceedings. Prior thereto I had two meetings in my chambers with Richard W. Blakey, counsel for plaintiff Harrah's Club, and Bert Goldwater, counsel for Brunzell Construction Co., Inc. of Nevada. At the time of those meetings I told counsel I felt that the matter should be heard by a Nevada Court since plaintiff and defendant are Nevada corporations and the dispute involved the construction of a building in Reno, Nevada; but that I also felt that defendant should not be required to litigate the matter twice, once in California where jurisdiction over Harrah's Club as well as others had been obtained, and in Nevada where Harrah's Club and Brunzell Construction Co. were the sole parties. I therefore told counsel that I was inclined to grant both motions of Brunzell Construction unless certain defendants in the California action, No. 797883 in the Superior Court of Los Angeles County, who were parties to that action brought by Brunzell Construction, agreed to appear in the State of Nevada and accept service in this state unconditionally. The first meeting with counsel was held December 3, 1964, and I gave counsel for Harrah's Club until December 18, 1964, within which to arrange for the appearance of other defendants or the motions of Brunzell Construction would be

All the appearances by the California personal defendants, with the exception of two of them, and with the exception of William Harrah, subjected themselves unconditionally to the jurisdiction of the Nevada court. The failure of William Harrah to file an appearance, we do not consider of any significance. He was not a party to the Nevada action. The appearance in the Nevada action of the other two California defendants[2] was not unconditional but recited: "This appointment [of attorney to accept service] is conditional and shall become effective only upon the dismissal by plaintiff Brunzell Construction Co., Inc. of Nevada of Los Angeles Superior Court action No. 797,883, entitled Brunzell Construction Co., Inc. of Nevada, a corporation, vs. Harrah's Club, the undersigned, and various others. * * *"

Brunzell appealed from the order denying its motion for a stay of the Nevada proceedings and from the order denying its motion to dissolve the injunction restraining Brunzell from proceeding against Harrah in California.

(1) Harrah maintains that the denial of Brunzell's renewed motion for a stay is not an appealable order. In this it is correct. This court has consistently held that the right of appeal is fixed by statute and that there can be no appeal except as provided by statute. Johns-Manville, Inc. v. Lander County, 48 Nev. 244, 229 P. 387; Quinn v. Quinn, 53 Nev. 67, 292 P. 621. NRCP 72(b) lists "Appealable Determinations," following the prior statutes in this regard. An order granting or denying a stay of proceedings is not among them.

---

granted. On December 17, 1964, counsel for plaintiff Harrah's Club requested a conference with me and Bert Goldwater, attorney for Brunzell Construction, at which conference I granted additional time to Harrah's Club until December 23, 1964. Thereafter defendants, parties named Dames & Moore, Vernon A. Smoots, Trent R. Dames, William W. Moore, William C. Wagner, Robert Raimist and John A. Martin, in the California action filed herein a notice of submission to the jurisdiction of this Court and I thereupon refused to dissolve the injunction or stay these proceedings and denied the motions of defendant Brunzell Construction Co., Inc. of Nevada."

[2]Martin, the structural engineer, and Smoots, Dames & Moore, the soils engineers.

The attempted appeal from the order denying Brunzell's motion for a stay of the Nevada proceedings must be dismissed, and it is so ordered.

(2) The first ground of Brunzell's appeal from the order granting Harrah's motion to restrain Brunzell from proceeding with the California case is that the court did not require the filing of a bond, as required by NRCP 65(c).[3] We are of the opinion that this point is well taken. It is the rule in this state that under the mandatory provisions of the statute the requirement for the filing of a bond is essential to the validity of an injunction. State ex rel. Friedman v. District Court, 81 Nev. 131, 399 P.2d 632. Respondent asks that we overrule Friedman, for the reason that appellate courts in the federal system have construed the federal Rule 65(c) (which is in all material respects identical with NRCP 65(c)) as not being mandatory, and cites cases from the eighth, sixth, second and tenth circuits.[4] However, the circuit courts of appeal for the third, seventh and ninth circuits are in accord with the construction placed on NRCP 65(c) by this court.[5]

It is clear that the federal court holdings are in conflict. There is no disposition on the part of this court to overrule its holding in Friedman and prior cases and to accept the decisions of the particular federal cases relied on by respondent which appear to hold that the requirement for a bond "in such sum as the court deems proper"

---

[3]NRCP 65(c) "SECURITY. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the State or of an officer or agency thereof."

[4]Magidson v. Duggan, 180 F.2d 473 (8th Cir.) ; United States v. Onan, 190 F.2d 1 (8th Cir.) ; Urbain v. Knapp Bros. Manufacturing Co., 217 F.2d 810 (6th Cir.) ; Ferguson v. Tabah, 288 F.2d 665 (2nd Cir.) ; Continental Oil Company v. Frontier Refining Co., 338 F.2d 780 (10th Cir.).

[5]Hopkins v. Wallin, 179 F.2d 136 (3rd Cir.) ; Chatz v. Freeman, 204 F.2d 764 (7th Cir.) ; Pioche Mines v. Dolman, 333 F.2d 257 (9th Cir.).

implies that the injunction may be issued without any provision for bond.

From that part of the district court's "Statement and Order," ordered by the court to be part of the record in the case, it is apparent that the trial court recognized the general rules governing the granting or the refusal to grant an injunction against prosecuting an action in another state. 19 A.L.R.2d 301, 321. In characterizing the California action here involved, the California District Court of Appeal in Brunzell Construction Co. Inc. of Nev. v. Harrah's Club, 225 Cal.App.2d 734, 37 Cal. Rptr. 659, 665, stated: "The causes of action in this case are all transitory. Four of the seven causes are based on a tort theory." The four causes of action based on tort are against California residents who were not parties to the Nevada action. The California court quoted Schultz v. Union Pacific Railroad Co., 118 Cal.App.2d 169, 257 P.2d 1003, as follows:

" 'The general policy of the common-law courts is to entertain transitory tort actions regardless of the parties or the place where the cause of action arose, if the court in which the action is brought has jurisdiction over the parties and the subject-matter. The rule is that if a cause of action is transitory the action may be brought in this state if the defendant is found here. * * * California courts exercise that jurisdiction in actions by citizens of other states, nonresidents of this state, for the trial of transitory causes of action, whether based on the common-law or a statute of a sister state or a statute of the United States. There is the limitation that the law of the sister state be not contrary to the express provisions of the law or the public policy of California, to abstract justice or pure morals, or injurious to the people.' " (None of these limitations are applicable here.) The court devoted four full pages to a description of the business activities conducted by Harrah's Club in California. Brunzell Construction Co., Inc., of Nev. v. Harrah's Club, 225 Cal.App.2d 734, 37 Cal.Rptr. 659–665. Such recital overwhelmingly supports its reversal of the superior court order quashing service of summons on Harrah's Club, and holding it subject to the California jurisdiction.

Harrah makes much of the fact that in the California action the superior court, on July 23, 1964, granted Harrah's motion for a stay of the California action against it, but it is apparent from the language used by the California superior court that it did this in recognition of the Nevada district court's injunction. The Superior Court of Los Angeles County said: "It appears that unless this order is made, plaintiff in this action threatens to proceed with this action in violation of the injunctive order made in the 'Reno lawsuit.'" It ordered a stay of the California action "pending disposition of the 'Reno lawsuit' * * * or pending termination of the injunction dated August 23, 1963, made in said 'Reno lawsuit' by the Nevada court itself, in the event it should hereafter elect to do so, whichever event first occurs." Nothing in the California court's stay of the California proceedings affects the determination of this appeal.

Although the violation of NRCP 65(c) requires a reversal, it is apparent that the result of a reversal on such ground would be a curing of the defect and another temporary injunction based on the furnishing of a bond with a second appeal on the law and the facts already before us in the voluminous briefs and the spirited oral arguments already presented. This would require a duplication of effort and an expenditure of time for which such action on our part would be responsible. We think it would be better for all of the litigants involved in the Nevada and California actions that we express our views at this time.

(3) We have already quoted in footnote 1, supra, the words of the trial judge indicating his view that appellant's motion to discharge the temporary injunction was well taken and would be granted unless "certain defendants" in the California action in which Brunzell was plaintiff "agreed to appear in the State of Nevada [action] and accept service in this state unconditionally." The time within which "to arrange" for such appearance was fixed, and later extended at the request of Harrah. When these appearances were filed, the court made its order denying Brunzell's motion to discharge the injunction.

(4) The reasons for the court's action are stated in the separate paragraphs of its order. The first is stated as follows:

"The claims of defendant Brunzell asserted against plaintiff Harrah's Club in the California action relate entirely to matters of concern to the State of Nevada and to local conditions within Reno, Nevada, including the condition of the building site in Reno, Nevada, the condition of the Dondero Building adjoining the building site in Reno, Nevada, the interpretation of leases and documents affecting the building site and affecting the adjoining property in Reno, Nevada, and the interpretation of Reno municipal ordinances. Such local conditions and matters are not properly the concern of the Court in Los Angeles, California, and cannot be readily or properly understood by said Court."

Case law affords no support for this reason. See cases cited in Annot., 69 A.L.R. 591, and cases cited in Annot., 6 A.L.R.2d 896, 910 et seq. California courts can apply Nevada law and City of Reno ordinances as well as Nevada courts, and descriptions of the Reno building site and adjoining property may be as well described to a California court or jury as to a Nevada court or jury.

In 28 Am.Jur., Injunctions § 218, pages 724, 725, it is stated:

"§ 218. *Attitude and Discretion of Court.* The question as to when a court of equity will exercise jurisdiction to restrain parties from prosecuting judicial proceedings in other states is one of great delicacy, since it may frequently lead to a conflict of jurisdiction. On general principles and on grounds of comity, the power is sparingly and reluctantly exercised, and the relief is not granted except for grave reasons and under very special circumstances. * * * The power [to enjoin the action in the foreign state] should be exercised only when necessary and equitable in the orderly administration of justice, and the complainant must, as on other applications for injunction, have sufficient equitable grounds for the relief. He must make a clear showing that it would be inequitable, unfair, and unjust to permit

the prosecution of the suit in the foreign jurisdiction, for ordinarily, a court of equity will not exercise its discretion to restrain the prosecution of a suit in another state unless a clear equity is made out requiring the interposition of the court to prevent a manifest wrong and injustice.

"The power of restraining the prosecution of a suit already begun in another jurisdiction is one which should be exercised with care and with just regard to the comity which ought to prevail among co-ordinate sovereignties, and in many instances the courts have declined to exercise such power because the complainant failed to make out a clear case requiring interposition of the court to prevent manifest wrong or injustice, that is, failed to show sufficient equitable grounds for stopping the progress of that suit."

That local conditions "cannot be readily or properly understood" by a California court is simply an unwarranted statement.

(5) The next reason given by the court for the injunction is as follows:

"The California forum was selected by defendant Brunzell for the purpose of subjecting plaintiff Harrah's Club to substantial and unnecessary inconvenience and expense, and for the purpose of vexatiously harassing plaintiff Harrah's Club, in order to oppress and annoy plaintiff Harrah's Club and to gain an inequitable advantage over plaintiff Harrah's Club and as a means of compelling plaintiff Harrah's Club to settle with defendants Brunzell and Glens Falls."

As to the ground that the California action was brought to compel Harrah to settle with Brunzell and Glens Falls, this may have been the theory of Harrah or his counsel, but it has no support in the record.

As to the finding that the California action was brought to subject Harrah to inconvenience and expense and to vex, harass, oppress and annoy Harrah and gain an inequitable advantage over him, we think the complete answer is that it is uncontradicted that California was the only state in which Brunzell could find and serve

all the California defendants. And we think we may accept the analysis that the California District Court of Appeal made of the contract documents.

"The contract documents (invitations to bid, instructions to builders, form of proposal, form of agreement, A.I.A. general conditions, report of foundation investigation, supplement to general conditions, special provisions and plans and specifications and addendums thereto) prepared in Los Angeles County contain provisions requiring that the construction work be performed in accordance with the safety orders of the Industrial Accident Commission of the State of California, further that bidders on the construction work be required by the contract documents to comply with Sections 4100 to 4108 inclusive of the Government Code of the State of California. In short, Harrah's Club's representative in Los Angeles, in effect, wrote into the contract provisions that the laws of California shall govern the contract insofar as subcontractors and safety provisions are concerned." 37 Cal.Rptr. 659, 663.

(6) The next reason given for granting the injunction is:

"Defendant Brunzell contends in the California action that plaintiff Harrah's Club has done and is doing business in the State of California without qualifying so to do under California law. Defendant Brunzell seeks thereby to oppress and take improper advantage of Harrah's Club by compelling Harrah's Club to be exposed to the risk of being found in violation of California penal law and the threat of being subject to California taxes and penalties. In so contending, defendant Brunzell has forced Harrah's Club to engage in prolonged, expensive and extensive litigation which still continues over the sole question of whether Harrah's Club has done or is doing business in California."

But the District Court of Appeal in California took eight columns to prove its conclusion that Harrah *was* doing business in California. If it was the proof adduced by Brunzell that led the California court to this conclusion, and led it to the reversing of the Superior Court's

order quashing service, this was apparently the lawful and justifiable end sought by this phase of the litigation, which phase was induced by Harrah.

(7) The next reason for the injunction is stated by the trial court as follows:

"Defendant Brunzell has selected the California forum for the oppressive purpose of requiring Harrah's Club to be subject to trial in a jurisdiction that regards gambling as illegal, criminal and against public policy, thereby seeking to take advantage of prejudice against Harrah's Club as the operator of a gambling business."

In this the court apparently concurred in arguments of respondent's counsel. The same arguments were submitted to this court, both in the briefs and in oral argument. They amount simply to the contention that Harrah will receive a less favorable consideration in California, where gambling is illegal, than in Nevada, where gambling is legal. Similar conditions have been rejected in numerous cases as grounds for enjoining the prosecution of transitory actions in a foreign jurisdiction, and are well illustrated in McDaniel v. Alford, 148 Ga. 609, 97 S.E. 673. There McDaniel, a domiciliary of Georgia, sought to enjoin Alford, also a domiciliary of Georgia, from prosecuting an action instituted in Tennessee, to recover damages for an alleged breach of warranty in a certain deed for land situated in Georgia. The petition for the injunction alleged, inter alia:

" 'that the defendants herein, with their acquaintances and connections in Tennessee, feel that they have an advantage over petitioner in the courts of Tennessee which they would not have in Georgia, and petitioner alleges that this is the sole reason why this action was instituted in Hamilton county, Tenn., and said bill, as petitioner alleges, was prepared and lay in wait for petitioner, who occasionally visits Chattanooga, and that when it was learned by the defendants herein that petitioner was in Hamilton county, Tenn., the same was filed and served upon him in an effort to take the advantage which the defendants herein believe to exist in their favor by reason of the action having been brought

in Tennessee, where petitioner will be required to produce his proof in a foreign jurisdiction and prove the law of Georgia as a substantive fact, employ foreign counsel, and be subjected to much annoyance for which there is no relief against the defendants herein * * *.' " 97 S.E. 673.

Citing a number of authorities from other states, the Supreme Court of Georgia wrote its own syllabus as follows:

"The courts of one state may take jurisdiction of a transitory cause of action originating in another state, when the defendant has been locally found and served, although both parties are at the time domiciliary residents of a foreign state. When both parties to an action in a sister state are domiciled in another, the courts of equity in the latter may act in personam and direct the parties by injunction to proceed no further in such suit. But in such case the power is not exercised capriciously, nor merely to compel litigants to use the courts of their own state, nor even because the complainant has good reason to apprehend a less favorable result for himself in a foreign court. And in such case it is necessary to show that the purpose, or necessary effect, of such action is to obtain an unconscionable or inequitable advantage to which the plaintiff therein would not be entitled in the domicile of the parties. * * *

"Applying the foregoing principles to the allegations of the petition as amended in this case, the plaintiff failed to allege a cause of action for injunctive relief." 97 S.E. 673.

(8) The trial court gives a further reason for its injunction as follows:

"Defendant Brunzell seeks to harass and annoy plaintiff in the California forum by attempting to apply California law to the Nevada contract and the Nevada cause of action, to avoid the application of Nevada law to what is exclusively a Nevada problem. Defendant Brunzell seeks to harass and annoy plaintiff by placing upon plaintiff the burden of attempting to establish and prove

Nevada law and Reno, Nevada ordinances to the satisfaction of a California Court and California Judge who are entirely unfamiliar therewith. In so doing, defendant Brunzell is attempting to subject plaintiff Harrah's Club to inconvenience and unnecessary expense and to the uncertainty which necessarily accompanies the trial of a case in a forum not familiar with local conditions and local laws and ordinances."

In the main, such reason has been rejected, supra. In addition, we refer to our extended quotation supra from Brunzell v. Harrah's Club, 225 Cal.App.2d 734, 37 Cal. Rptr. 659, 663, holding that "* * * Harrah's Club's representative in Los Angeles, in effect, wrote into the contract provisions that the laws of California shall govern the contract insofar as subcontractors and safety provisions are concerned." See also McDaniel v. Alford, supra, and Evans v. Morrow, 234 N.C. 600, 68 S.E.2d 258, where the Supreme Court of North Carolina said (citing authorities):

"A court of equity will not enjoin judicial proceedings in the court of another state through distrust of the competency of such court to do justice in cases within its jurisdiction."

(9) A further ground for the injunction contains repeated statements of Brunzell's annoyance and harassment of Harrah, particularly by "repetitious, contradictory and ill-founded pleadings in its Complaint * * * artificially conceived * * * for the purpose of simulating issues against California residents to lend color to the claim of defendant Brunzell that the proper forum for the trial of the action is in Los Angeles, California. * * *"

But, primarily, the sufficiency of the complaint against Harrah and the personal California defendants was tested by the Superior Court of Los Angeles County, California, which found it sufficient by overruling the demurrer of defendant William C. Wagner.

(10) The next reason for the injunction is the expense, risk and inconvenience to Harrah, the establishment of

its defense by depositions, the transportation of witnesses, experts and counsel to California, the establishment in California of Nevada law and Reno ordinances, the hardship of a trial in two states, and the difficulty of proving Nevada matters to a California court. These have been heretofore disposed of. Evans v. Morrow, 234 N.C. 600, 68 S.E.2d 258. But the court below says: "Further, said plaintiff Harrah's Club will face the inconvenience and hardship of trial in two states * * *." This is hardly true. "A citizen of a state has an undeniable right to go into another state or country to pursue such remedies and secure such relief as may there be available." 28 Am.Jur., Injunctions § 214, page 720. Courts are reluctant to interfere with the exercise of such right. Application for an injunction against proceeding in a foreign jurisdiction raises not so much a question of the power of the court to grant the remedy as the propriety of doing so in the particular case. Id. In the present instance the fact was that the only state in which Brunzell could find and sue the personal defendants was California. They all lived in Los Angeles County, California. After the Superior Court's order quashing service on Harrah's Club, Inc., was reversed, all defendants were subject to the California jurisdiction. To all intents and purposes the case is at issue there. Harrah will not face two trials, but only the one trial in California. Its whole complaint seems to be that it would receive fairer treatment, and at less expense, in a Nevada court. Brunzell insists that it can get complete relief against all defendants in California alone; that unless the injunction is dissolved, *it* faces two suits, one defending against Harrah's action in Nevada and one against the California defendants in California, in an action in tort growing out of the same contract. This contention appears to be well taken.

(11) This ground for the injunction is based on the lack of California jurisdiction over Harrah's Club, Inc., in accordance with the Superior Court's order quashing service on that corporation. However, as we have seen, that order was reversed by the Court of Appeal.

It will be remembered that the court's "Statement

and Order" recited that it was inclined to grant the motion for an order dissolving the injunction, unless the defendants in the California action "agreed to appear in the State of Nevada and accept service in this state unconditionally."[6]

Brunzell contends that because the "appearances" of the California personal defendants had not been filed at the time its motion to dissolve the injunction was argued and submitted, the court was not justified in basing its order on such later filing. We must reject this contention. The matter was in the bosom of the court until its order was filed.

We hold that the injunction restraining Brunzell from prosecuting the California action is not justified by the reasons recited by the court below (which are called findings, but are for the most part conclusions) or by the briefs of respondent, and that the injunction order must be reversed.

Other matters discussed in the briefs have had our full consideration but do not require further discussion here.

In addition to the appeal, Brunzell filed (No. 4927, State ex rel. Brunzell v. Second Judicial District Court) while this appeal was pending, a petition for a writ of mandamus or, in the alternative, for a writ of certiorari directed against the district court. In view of the foregoing, such petition does not require our attention. A return date on the alternative writ was set for June 29, 1965, being the same date as set for oral argument of this appeal. Both were argued and submitted. An order is being entered dismissing the same.

The attempted appeal from the order denying appellant's motion for a stay of the Nevada proceedings is dismissed.

The order of December 24, 1964, refusing to dissolve the temporary injunction of August 23, 1963, against Brunzell is reversed with costs. Such costs shall not

---

[6]The sufficiency of the "appearance" of the California personal defendants is not attacked by appellants, and is not considered in this opinion.

include the copies of the numerous briefs filed in the trial courts, appearing in the record on appeal.

ZENOFF, D. J., and BREEN, D. J., concur.